**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BIREN BOSE,**

          **Plaintiff,**

-vs-                                          Case No. 6:05-cv-1771-Orl-31KRS

**OCEANS CASINO CRUISES, INC.,**
**INDIVIDUALLY AND D/B/A SUNCRUZ**
**CASINOS,**

          **Defendants.**

_____

## ORDER

This matter comes before the Court on a Motion for Summary Judgment (Doc. 24) filed by Defendant Oceans Casino Cruises, Inc., d/b/a SunCruz Casinos ("SunCruz") and Plaintiff's Response thereto (Doc. 30).

**I. Background**

Plaintiff, Biren Bose ("Bose") was hired by SunCruz in September, 2004 to be the Lead Captain of the "Surfside Princess", a vessel which sails daily from Cape Canaveral. Bose was discharged from this position on May 18, 2005. Bose claims that his termination was the result of wrongful discrimination based on his race (Asian Indian) and nation of origin(India) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (Doc. 30 at 2).

Bose alleges that he was treated differently by his supervisor, John Crowley ("Crowley"), from the very beginning due to his race. (Doc. 30 at 5-7). Bose also argues that SunCruz repeatedly hired white Americans to fill positions that did not need to be filled. (Doc. 30 at 5-6,

10). Bose further complains that SunCruz violated its own policies by failing to reprimand him before his termination, and not giving him advanced notice that he was going to face accusations that could result in discipline. (Doc. 30 at 8, 11). Bose argues that his termination is suspect because he received a raise and a fairly positive performance review shortly before his termination. (Doc. 30 at 9-10; Doc. 24 at 7-8).

Defendant has offered several justifications for its decision to terminate Bose, however, the principal justification involves Bose's apparent retaliation against an employee for complaining of sexual harassment.[1] In April 2005, one of Bose's subordinates, Able Bodied Seaman Sheila Pavkov ("Pavkov"), complained to the director of Human Resources James Zompa ("Zompa"), that she had been sexually harassed by one of her co-workers. (Doc. 24 at 8). Following that incident, Zompa learned that Bose intended to discipline Pavkov for going above his head to report the incident to Zompa. (Doc. 24 at 8). As Pavkov's actions had been in compliance with company policy, Zompa informed Bose both verbally and in writing that any discipline of Pavkov would be inappropriate. (Doc. 24 at 8).

Several days later, Bose's First Mate, John Jacobs, reported that Bose had ordered him to discipline Pavkov for wearing improper foot attire at work. (Doc. 24 at 9). Pavkov, however, had been allowed to deviate from the company footwear policy for over two years, pursuant to a Doctor's note. (Doc. 24 at 9). Zompa again contacted Bose and instructed him not to discipline

---

[1] The other justifications include: Ordering a drug test of an employee in violation of company policy; failing to inform the General Manager that the Sheriff had been called to the vessel; failing to follow procedure with regard to accident reports; failure to discipline relief captains; interference with hiring of new relief captains; failure to comply with payroll policies; and overall poor performance of administrative duties. (Doc. 24 at 4-8).

Pavkov for her shoes, and stated that his actions seemed retaliatory. (Doc. 24 at 10). Bose agreed to leave Pavkov alone. (Doc. 24 at 10).

Soon thereafter, Zompa was informed that Bose intended to contact the United States Coast Guard (the "USCG") and inform them that Pavkov had received a citation for driving under the influence ("DUI"). (Doc. 24 at 10). Zompa contacted Bose again, and Bose stated that he felt it was mandatory to report the incident to the USCG. (Doc. 24 at 10). Zompa asked Bose to hold off on reporting the incident until Zompa could research whether an unrelated DUI was required to be reported to the USCG. (Doc. 24 at 10-11). After researching the issue, Zompa contacted Bose again to tell him that such a report was not necessary. (Doc. 24 at 11) However, Bose had already reported the incident to the USCG – contrary to Zompa's request. (Doc. 24 at 11).

As a result of what SunCruz perceived as retaliation against Pavkov, a meeting was held on May 18th, 2005. (Doc. 24 at 12). Present at the meeting were Bose, Zompa, Crowley and the General Manager of the Port Canaveral facility, Cheryl Lindsey ("Lindsey"). (Doc. 24 at 12). After a discussion of Bose's performance issues, including, *inter alia*, the Pavkov incidents, Bose was asked to step out of the room. (Doc. 24 at 12). When he returned, he was informed that if he did not resign, he would be terminated. (Doc. 24 at 12). Plaintiff refused to resign, and was therefore terminated. In July of 2005, SunCruz hired August Werdenberg, a Caucasian male, to fill Bose's position. (Doc. 30 at 12).

## II. Standard of review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to

the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

**III. Legal Analysis**

*A) Title VII*

In order to prove discriminatory treatment in violation of Title VII, a plaintiff must first establish a *prima facie* case of discrimination. Absent direct evidence of discrimination, a plaintiff in a termination case establishes a prima facie case by showing (1) that she is a member of a protected class, (2) that she was qualified for the position held, (3) that she was terminated, and (4) that she was replaced by a person outside the protected class.

*Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995).

The parties do not dispute that Bose is a member of a protected class or that he was terminated and replaced by a Caucasian male.[2]  As for whether Bose is qualified for his job, Plaintiff has presented enough evidence to support this element at this stage.  Therefore, the Court will assume that the Plaintiff has established a *prima facie* case for discrimination under the summary judgment standard.

> A *prima facie* case of discrimination raises the inference that discriminatory intent motivated the adverse employment action. The employer may rebut this inference by clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for the adverse action. Once the employer satisfies this burden of production, the plaintiff then has the burden of persuading the court that the proffered reason is a pretext for the true discriminatory reason.

*Id*. (Internal quotation and citation omitted).

SunCruz has articulated several specific non-discriminatory justifications for Bose' termination.  While Bose argues that SunCruz did not follow its own policies regarding discipline and termination, and that the explanations offered were not good reasons for termination, neither

---

[2] However, Defendants argue that the test is not whether Bose was replaced by a person who is not a member of his protected class but, instead, whether Bose can show that similarly situated employees who were not members of the protected class were treated differently. (Doc. 24 at 13). The law is not entirely clear on this distinction, yet, for purposes of this order it will not effect the outcome. Therefore, the Court assumes without deciding that Plaintiff's statement of the law is correct.

of these arguments are relevant. Title VII does not offer relief from unfair treatment by an employer, only for discrimination based on membership in a protected class. *Id.* at 1074.

Bose does argue that some of the allegations made by SunCruz are false, however, several of the proffered justifications are left unchallenged. Bose does not deny that he threatened to discipline Pavkov for going over his head to report sexual harassment, or that he threatened to discipline her for improper foot attire. Bose claims that he did not lie to Zompa about reporting Pavkov's DUI to the USCG, however, he does not deny making the report after being told by Zompa to wait until some research had been completed. Bose also does not deny that he failed to attend a training seminar on sexual harassment policies or make himself familiar with SunCruz' policies on the issue.[3] Bose makes numerous allegations that SunCruz did not comply with its own company policies and procedures,[4] however, it appears that he deemed it unnecessary to become familiar with such policies during his employment.

In order to move past the summary judgment stage, Plaintiff must persuade the Court that there is at least a question of fact that *each* of Defendant's proffered reasons for termination are pretextual. *Combs v. Plantation Patterns, Meadowcraft, Inc*., 106 F.3d 1519, 1529 (11th Cir. 1997). Plaintiff has failed to meet this burden. Whether the decision was right or wrong, it seems clear to this Court that Bose's termination was the result of his treatment of Pavkov, not the result

---

[3] Bose missed a company seminar on sexual harassment because he apparently went to the wrong Holiday Inn. Furthermore, at his deposition he indicated that he was unaware of SunCruz' sexual harassment policies and did not think retaliation was inappropriate. (Doc. 24 at 15-16).

[4] For example, Bose claims that he was not warned in writing before he was terminated, and that he did not receive advanced notice of the meeting concerning his performance issues. Some of these allegations are refuted by the fact that Bose was warned in writing by Zompa not to retaliate against Pavkov. (Doc. 24 at 8-9).

of discrimination based on race or national origin.  There is simply no evidence of pretext here.  Therefore, Defendant is entitled to summary judgment on the Title VII claim.

    *B) Florida Whistleblower's Act*

Plaintiff also brings a claim under the Florida Whistleblower's Act, Fla. Stat. § 448.102 (the "FWA").  Defendant's motion alleges that "Plaintiff has not presented any evidence to show that he 'blew the whistle' on any violation of law, rule, or regulation under the FWA." (Doc. 24 at 2).  Plaintiff claims that he was retaliated against for reporting Pavkov to the USCG. (Doc. 30 at 2).  The FWA reads:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102.

Even assuming that reporting Pavkov's DUI to the USCG is enough to trigger this protection, Bose did not report the alleged violation to SunCruz in writing, nor did he afford SunCruz a  reasonable opportunity for correction, because he reported the incident to the USCG before giving Zompa a chance to research the issue.  Therefore, Defendant is entitled to summary judgment on this claim as well.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

Judgment is entered in favor of the Defendant. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 5, 2006.

GREGORY A. PRESNELL  
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party